I'd like to begin with this last case that was before this court about the overall picture of this case. This is a case where there was a compromise done on an acquisition of property, paying $6 million for the property, which had a value, and there's no dispute as to that, and also no dispute as to that it was worth at least $12 million. And so the question that arises is that for 24 years now, we've relied upon the AC properties and the four concepts that are considered with respect to whether one approves a compromise, and in this particular case, relying upon those, the bankruptcy court did in fact find that the compromise was approved, and that was also affirmed by the bankruptcy appellant panel based upon the fact that there was no abuse of discretion. My question is, is there ever a time when in fact you have gone through the entire four factors and come up with a result which is not fair and equitable? And I'm saying that because it appears that there's some law that's been hidden inside the abuse of discretion, which in fact this court should have review about. So the first analysis and the first question is this, which is in Section 550 of the Bankruptcy Code where it talks about profit. I recognize that in this particular circuit, there is no case law with respect to what does it mean by profit. However, other courts have indicated that profit is equal to rent. That becomes important in this particular case because the trustee did an analysis. It's Exhibit 310.-2, and what he said is that I've done this analysis of this case, and after I go through paying all the claims, paying everybody, if there's any surplus, at best it's $270,000. But there's an inaccuracy with respect to his analysis. That inaccuracy is that in fact what he did is he took $1,890,752 of interest, which would accrue on this judgment, and used that as a subtraction. But in doing so, did not address the issue of rent, profits and rent. We provided evidence of such, and we showed that from the years of 2015 through 2018, there was $1,599,773.05. By the way, I'd like to reserve five minutes for my rebuttal, and I will make sure when I get to that point. Then there was also in 2019, we can look at what happened in the previous years, and it would add another $339,000. That does not take into consideration an administrative claim of approximately $200,000 for the lack of rent paid by ISIM in the first year. Well, this whole discussion assumes that you would prevail, or you should have prevailed on the adversarial claim, right? That's correct. That's correct. That's question A, right? A lot of the interest accords and the bankruptcy accords conclusion and the bankruptcy accords review was that that was far from a far-crying conclusion. Yeah, and that's accurate. But when you look at that and you look at the elements, first off, is there some value equivalent value? Did this property get done for equivalent value? The answer is no. That can be demonstrated by the analysis I've just shown. If you take the rent and you compare it to the interest, they offset each other. So the result is that if you subtract off that $1,890,000 from the analysis, it jumps it from $270,000 to over $2,000,000. And if you have that analysis of $2,000,000 and you presented that to the court, no bankruptcy judge would in fact approve that as a compromise recognizing that there's that kind of surplus. Now, I recognize that you've got to go through the action, but there is very little done on the court action. Our action was commenced in our name. It got converted to a Chapter 7. And then it became an action which was done by the trustee. But after that, the trustee did very little. In fact, I think it's obvious that what the trustee did in this particular case is he met with Halls and said, exactly what are we going to have to take to get all the creditors paid, and you pay that amount, and I'm done with this case. What he failed to consider is the duty he had also to the ISIMs to maximize the estate, and he did not do that because there is $2,000,000 left even when you look at their analysis. Now, let's step back to what the question has just been asked. Yes? First of all, there was a discussion about the fact that the lease and the option to purchase had value as well. And then there were issues about other values that might have gone in. So it's not that the bankruptcy judge ignored this problem. It went into a great length. And secondly, with regards to the – is that true? I mean, you never addressed the possibility that there was other value in this transaction. Oh, yes. Separate and apart from the $12,000,000 value of property, there's Palisade Watershare stocks. There is also – there is Latin Flowers that also in this compromise was all of which was going to go to Halls. There was all kinds of other assets that were being considered. But my concern is that this adversary case was going to be dismissed. And it was not an adversary case that should have been dismissed at this point in time because, A, I didn't get $12,000,000 worth of property for $6,000,000. Now, I recognize there's another fundamental requirement under Section 548. And that's either to show insolvency or something else. There was a significant amount of evidence offered about the solvency issue. And I recognize that it would be – that I'm not here to say that solvency was something that was clearly shown, namely insolvency. But it forgot the other two factors. And those factors are whether they're – The faculty judge did keep adding in or reduced to true level capital. He said both. He did say both. But if you look at the transcript of his ruling, he did a significant analysis on insolvency. He said nothing. Only when a motion amendment was filed did he say, well, I've thought about those, but where's the analysis? Where's the analysis? Because you'll find that when Ralph Isom entered into this deed in lieu of foreclosure, in that deed in lieu of foreclosure, he was left with nothing. He had a responsibility under the lease that you mentioned that he was to pay $464,000 upfront, which is very significant. It's more than ever was paid in any of the other years of leases. The difficulty he had, he had no capital. He had nothing to use to pay that, so he went out and subleased the property. The sublease was contrary to the terms of the lease, and therefore he was already in breach. In fact, they sued him. Ralph Isom was sued in the spring of that year. And so to say, well, this option had some value, how do you say it had value when it's clear that this lease was to fail from the get-go? Furthermore, when he asked, because he had approval of a loan, that he would have an opportunity to purchase the property, they would never give him a figure. So ultimately, what did he have to do? He ended up in having to file a bankruptcy. Now, the other element it could be is the fact that... I thought the purchase price was in the agreement. Purchase price of what? The option. The option included of the price. If you look at it, it's not, because it says you've got to pay this and this and this and this, and it's all those extra things that he had to pay that he couldn't get a figure to. There's no question that it was meant from the get-go that that lease and option to purchase was to fail, and the reason for that is because then they would get the property. The second thing I think that's important about that is the other issue, and that is what about the fact that he incurred all this debt after he did the deed in lieu? He did $539,000 of additional debt. That also meets the criteria. So you have 548 working because you have 6 million is the price that they pay for 12 million. You then have all of a sudden elements that may not be insolvency, but the other two elements. So then you jump over to 550, and you look at the issue of profit, and when you look at the issue of profit being the rent, and it offsets the interest they're using in their analysis under Section Exhibit 310, the result is, in this particular case, it was that hidden below the abuse of discretion was misapplication of law, no analysis with respect to the other provisions of 548, and nothing, nothing about the concept of rent and how that rent would offset the interest. Now, there are other factors. There's a breach of fiduciary duty here, and I've talked about that. There are other elements that were undermined by just taking abuse of discretion, but I indicated I'd like to keep five minutes of my time, and so I will reserve that time. Thank you. Mr. Spinner, earlier speaker. Thank you. Good afternoon, Your Honors. I want to give you my speech about the fact that it's a very bad idea to split arguments. We should be tougher than we are. You've already decided to do it, but it always backfires on me. Thank you, Your Honor. Like I said, my name is Jim Spinner. I'm the attorney for R. Sam Hawkins, the Chapter 7 trustee in the ISM and the INS farms bankruptcy proceeding. Those proceedings were, of course, consolidated into one action, and I've identified those. I think they've been identified in the briefing as ISMs or the debtors. I represent one of the appellees. The other appellee is Brad Hall and Associates and Farms, LLC, which we've identified in the briefing as Hall. I think just to address, maybe start out addressing one of Mr. Robinson's points, that I think part of the problem that the debtors have in this case is they've always taken an oversimplistic view of this. Of course, they do that on behalf of the trustee, not speaking of the fact that they were in a Chapter 11 for almost two and a half years and that they were in the state court before that for almost two years. If the value of the property was such that they alleged that the trustees should pursue why they didn't exercise the option or weren't able to get a confirmed plan is an interesting question in itself. But the simplistic view that they've taken is, you know, this is a piece of property. The trustee could sell it and get this massive equity that the debtors allege is there. That's not the case. As the court pointed out, this is not a settlement versus selling the property. This is a settlement versus proceeding with an adversary on avoidance of a transfer. That if that was successful and the court, after five days of an evidentiary hearing, agreed with the trustees position that based on a number of factors, that's not a forgone conclusion by any means. If you get past that, then you get into selling the property and then renegading over claims and a number of other issues that would tail even a sale of the property. So it's not just we're not just looking at the trustee being able to sell this property. There were a number of steps in the bankruptcy court recognize this and the BAP affirmed. Yes. This is an emphasis on the value of the property. And they regard it as a mistake in determining the question because because of the not a tribute. First of all, they write about the fact that the rent should have been bounced off against the interest. I think the court looked at that and what the court what the bankruptcy court said, your honor, is that under 550 E. And I think if you look at the statute, it's pretty clear that you look, it speaks in terms of improvements by the transferee. And then the court and then the statute goes on to list about four or five things that would constitute improvement under that section. I know. Logical. It's logical that you're going to say, well, this isn't worth as much as you think it is because there's all the things you'll have to pay that you also want to say, look at what was coming in. So putting that aside sort of the net result was that the bankruptcy court said, well, it's not clear whether there was a whether there was equivalent value or not. And he said it was a neutral factor. Are you contesting that? And the court did. The bankruptcy court did say it was the first prong of the ANC properties test. The likelihood of success at the adversary was a neutral, neutral subject. The BAP agreed with that. It's become a little more complicated since then because there was no stay on the appeal and the case has progressed on forward. And there have been some things that would make that more complicated. But I think the end result from both the court and again, going back to this question of interest and profit versus improvements. And I think there was definitely evidence that, you know, there's been a lot of improvements and things that would be offset against the profits. But you would have to take into account the interest that would be there. I mean, you'd have to calculate that. And I think it was the BAP that basically said that all aside. I mean, you know, this is not a trial of the adversary proceeding. It's whether or not there was an abuse of discretion in agreeing that this was a reasonable settlement. The BAP says what matters here is that the court found that the issue of solvency was not clear, would be vigorously contested. And that this fact added to the complexity of the litigation, the expense, the delay and inconvenience necessarily attending it. So there, you know, I think the bankruptcy courts and the BAP's approach was to step back and look at the totality of what the settlement accomplished. And the second element, or actually it's the third element of the ANC properties test, the complexity, the undue delay, the expense. That was really a main focus of both the bankruptcy court and BAP and said the trustee did analyze that. And this would be a very complex, expensive delay that could continue on for years on this type of situation as a major component in approving that compromise. As well as the other tests under the ANC properties test of the paramount interest of the creditors. As pointed out in the briefing, no creditors objected to the compromise. In fact, a major unsecured creditor, the debtor's mother, supported the compromise. She held a major unsecured claim in the case. So I think the ANC properties test is the preeminent case in the Ninth Circuit. It outlines what the trustee has to show to get a compromise. Was there any issue in ANC properties about surpluses for the debtor? I don't think it speaks in that itself. There are some other cases, even out of the District of Idaho, that says to even have standing, the debtors have to show that they have a potential pecuniary interest in it. And if they do that, then they can raise, you know, they have the standing to make the objection. Well, I mean, essentially, and the BAPT agreed with this. The license have to be right about the fact that there is some weight to be given to whether there were surpluses they could have gotten and they didn't get. Do you agree with that? You're saying because it's not an ANC, it doesn't count at all? No, I think the court determined that they have standing to raise their objection. I think the BAPT determined in the end, and I know the appellants referenced the BAPT footnote where they said part of the footnote, but not all the footnote that dealt with whether or not there was a duty to protect the debtor's interest, whatever that is. But the BAPT in the end result said, even if it's a potentially surplus case, the bankruptcy court considers the ISIM's best interest in approving the settlement. The court did engage in that analysis and concluded the settlement. I was just asking a legal question, whether the 4AC and C factors are exclusive or whether there is another one that just wasn't an issue there, which is the consideration of the interest of the debtor in any surplus. The ANC approach... Can you just give me a yes or no? Is that in fact a factor that it was considered to some degree? But my question is, is your argument that it shouldn't be considered or that it just didn't matter in this case? Yes, the end one. I think ANC doesn't speak directly to that, but I don't think it matters in this case. That was litigated as part of the evidentiary hearing. And the reason it doesn't matter is that there are a number of other issues that would detract from any surplus in this case. Primarily, the fact that the debtor's records in this case were terrible. We noted in the briefing as part of the transcript, the debtor acknowledged in testifying that the schedules that he used when they filed their Chapter 11 in 2015 were based on information that was 9 or 10 years old. Their tax information. It was amended after the trustee filed his motion to bring in this NOL, which they weren't able to support. The debtor's account, Mr. Snarr, testified that his was a no report filing. And what that means is that it was based solely on what the debtors told him. And the debtors just didn't have the records. I mean, he testified that he either dumped his records in a canal or he burned them in his driveway. And those were all reviewed. I mean, that was all part of the settlement to begin with. Thank you very much. Thank you, Mr. Maynes. Thank you, Your Honor. May it please the Court, Robert Maynes on behalf of Brad Hall and Associates and Farms, LLC. I just have two points, and I think that Mr. Spinner has already covered the first one with respect to the value. That's why you do split arguments. Thank you, Your Honor. With respect to the value, I think the BAPS comments with respect to what it would take to realize the value of the farm versus the value of the litigation really ties us back to the bankruptcy court's comments about eight different dominoes that would all have to fall in favor of the debtor in order for the speculative interests of the debtors to even arise. And I think that's really where the focus needs to be, and not on this $12 million versus $6 million. That gets us way into the determination of the facts, which I think under the record before the court is really for the bankruptcy court to address in the way that the evidence. The second issue that I think is significant is the interest accrual. And I think the way that you read 550E of the bankruptcy code is if and when there is avoidance of the transfer, then you determine whether or not the good faith transferee is entitled to the value of the improvements that it made to the property. It doesn't mean that we don't have a valid claim for the existing foreclosure judgments, because if we do away with the deeds in lieu, then all that is left is the foreclosure judgments. And those foreclosure judgments accrue interest. And so really there are two different claims in play. There's a claim for the improvements under 550E. But 550E doesn't speak to the fact that you still have a claim for your existing judgments, or if the judgment's avoided, then for the existing deed of trust and underlying notes. And so the interest calculation is significant. But at bottom, the bankruptcy court was not required to conduct a mini trial on those issues, but simply, as Matt noted, addressed the fact that it was an issue. It adds to the complexity of the calculation. But here we are. The bankruptcy court was left to weigh all those factors over a extensive five-day court trial, an extensive record. And so under the abuse of discretion standard, we think that there is no clear error. The law was applied correctly, and that the BAP and the bankruptcy court should be affirmed. Okay. Thank you very much. Thank you. Mr. Robinson, you have a little time. Thank you, Your Honor. May it please the Court, once again, the answer to the question on AC properties is no. There was no issue as to surplus. In fact, the bankruptcy judge mentioned that, mentioned that he's sure not sure what to do with that because in this particular case, he found standing because he saw that there's surplus. It really connects to the issue of solvency because it was the argument of Halls and the trustee that this was a solvent case, that we could not show insolvency. And I think the law would come down on abuse of discretion in favor of the bankruptcy judge about that issue. But what was not addressed, nor was any analysis given to the other two prongs, the prong of the fact there's lack of capital, and we demonstrated in the evidence we offered that they lack capital. He couldn't even keep going without reaching the lease by getting somebody to do a sublease for potato grounds so he could pay his first payment under the lease. The second thing that is interesting about that is the issue of incurring debt. He went from the date of the leu, not only did he owe for the rent, which was $600-something thousand dollars, but he incurred debt of $539,000 after the date and leu, which demonstrates what? That prong is also met. So you start with the first prong. And it is simple. It really is simple because how do you take $12 million worth of property and for $6 million, Mr. Hall gets it? What Mr. Hall does is he's going to raise all kinds of things. He's going to talk about how bad a guy that Ralph Isom is and whatever he can find. That's why I went on for five days so he can do what? He can show the court this is going to be so complex that I should get this property even though I only paid $6 million for it and it's worth $12 million. And that's really where the problem lies because hidden inside the abuse of discretion were law that was not followed. It was not followed under 548 because there's no analysis of those two other prongs. The other point, which is huge, is now they're coming forward and they're saying, well, basically ignoring the concept that property equals rent. They talk about improvements. Section Exhibit 108 talked about all the rent that was received. We developed it after we got the documentation how much rent they had received for every year but the last year. And we made a determination it would have been approximately the same. What prong does this go to of A and C? Does it go to the likelihood of success on the adversary action or does it go to the complexity question or both? Basically A and C goes to both. And what happens is a self-serving approach on the part of Halls is to make it a very complex case. This case could have been done in less than five days but it was done in five days because of the complexity encouraged. And, in fact, I made a motion in Lemony at the beginning saying let's deal with this motion for compromise. And they wanted to talk about all these things about how bad a guy Ralph Isom is and why. It's because they wanted to cloud it. They wanted to make it look like that there was a real issue of complexity. Now, when they want to talk about the improvements portion, there's Exhibit 109. We gave them an opportunity to say what improvements have you done? They didn't add any new buildings or anything to the property. They paid some taxes. They did a few minor repairs. It totaled $181,000. And so what, in essence, you have is you have profit ignored by the lower court. And once that's ignored by the lower court, then all of a sudden you have a swing from $270,000 to over $2 million. Did you have a question, Your Honor? Well, I guess I have the same question again. That seems to me to go to the value of the property if sold, but first you have to get to the probability of success question. Of course. Of course you do. Of course you do. But if you show that you've got $12 million worth of property, no dispute of that, paid $6 million for that, no dispute of that, you can show that the other prongs, even if you can't show insolvency, exist, then you've got to basically, in my mind, under the statute of slam dunk, you've got the opportunity for $2 million in surplus. And I can tell you that the trustee clearly took the position, my job is only to protect the creditors. I thought it was interesting that they make this big to do about Ralph Isom's mother even did not object to this. She didn't object after they agreed to pay her $111,000, which is more than their first analysis. And all the other creditors were going to get paid in full. But you've still got to deal with the issue that here's Ralph and Paula Isom who have property worth $12 million, and by the time it's done, the ruling is that this compromise is approved and they lose it all. And I don't really see that that was what ANC property was meant to be. We are meant to have a fair and equitable resolution. In this particular case, that's not occurred. Yes. Thank you very much. And I thank the lawyers for their arguments and the case of Isom v. Hopkins for submitting it. Thank you. And we are in recess. Thank you. This court for this session stands adjourned.
judges: Berzon, Miller, Bress